[No. 22140. Department One. November 19, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. C. S. WOLFSEN, *Appellant.*[1]

[1]Reported in 282 Pac. 216.

384

 

*G. M. Le Cocq,* for appellant.

*Charles R. Denney* and *C. W. Jordan,* for respondent.

MILLARD, J.—The defendant was found guilty by the verdict of a jury of the crime of unlawful possession of intoxicating liquor. From the judgment and sentence pronounced against him on the verdict, the defendant appeals.

██ The first question presented is, Was the evidence sufficient to sustain a conviction?

The evidence discloses that the appellant operates on the Pacific highway, three miles south of Everett, a gasoline station, a chicken dinner inn, and an auto camp. The buildings on the land owned or controlled by appellant were a gas station, three cabins for rent, one cabin occupied by appellant and his family, a chicken dinner house and a chicken coop. Two deputy sheriffs, with a search warrant, visited the appellant's place about seven p. m., April 6, 1929. They served the search warrant on appellant's wife at the chicken dinner house, a short distance from the dwelling house. An adult daughter of appellant, discovering the men were deputy sheriffs, started to run from the chicken dinner house towards the dwelling house, but was halted by one of the officers, who walked with her to that house. Upon arrival there, but prior to entry, the daughter, in a loud voice, announced to her father within the dwelling house, "The sheriffs are here." The officers found in a bedroom of the dwelling house a gallon glass container about half full of a liquid which one of the officers testified "smelled some like Hire's, so I left it there." While engaged in the

search for contraband in the front portion of the dwelling house, one of the deputies heard a crash on the outside which was caused by some one throwing into the yard, and breaking, a glass container. The glass container in the bedroom had disappeared. A batch of beer brew was found behind the stove in the dwelling house. The brew was destroyed and not offered as evidence. One of the deputies testified as to conversation with the appellant concerning the beer brew as follows:

"A. Why I asked Mr. Wolfsen, when Mr. Thompson was out, if he had any more beer besides this brew, and his wife spoke up and said she didn't think there was, and he said 'Yes, there is a few bottles left outside, I think.' I said 'Well, this brew is about to be bottled—ready to be bottled, rather,' and he said 'No,' he said, 'Not for a couple of days yet.' He says, 'I will show you. I have got a test,' so he gets the test and put the test in it and he says, 'It tests ten and we can't bottle until it tests twenty.' "

Back of one of the cabins, a distance of approximately thirty-three feet from the cabin, or not more than twenty-nine feet from the boundary line of appellant's property, a pint bottle of wine was found buried in the side of a stump. A ten-gallon keg containing about a half gallon of moonshine whiskey was also discovered. About twenty-six feet back of the cabin, the officers found two sacks of bottled beer (thirteen quart bottles and nineteen pint bottles). The chicken coop was searched. The straw on the floor was removed, and in the compartment below were found five empty ten-gallon kegs which gave forth an odor which one of the officers testified "smelled like they had contained wine."

The section in which the appellant lived is logged-off land. Appellant's nearest neighbor to the south

was five hundred feet distant; to the north, about one mile, and to the west, about one mile. Whether he had neighbors on the opposite side of the highway on which his property fronts, the evidence does not disclose. There is no evidence that the cabins were rented at the time of the raid. To the caches where the liquor was found, trails led from appellant's residence.

Appellant argues that the liquor was not found on his land; that the empty kegs found in the chicken house had been used by him in shipping loganberry juice from Whidby island, where he formerly resided, to an Everett cannery, which accounts for the odor, and that no wine had ever been placed in the kegs.

Clearly, there was evidence from which the jury were justified in finding that the liquor was owned by, and in the possession of, appellant. No doubt the jury were somewhat influenced by the conduct of appellant's daughter in warning him of the arrival of the deputies. Her cry, "The sheriffs are here," at least tended to indicate apprehension that her father might be detected in violating some law, probably that of making home brew. The jury might well believe that the destruction of the glass container (what the liquid contents were was not disclosed) was induced by the knowledge that intoxicating liquor was hidden in and about the buildings. Though the beer brew was not offered in evidence, the admission of the appellant that he was making beer, which was an infraction of the liquor law, was another factor which the jury doubtless considered in arriving at their verdict. These facts, considered with the fact of the discovery of moonshine whiskey and beer near appellant's cabins, were sufficient, if believed by the jury, to warrant conviction. The appellant's explanation of the odor in the kegs and the chicken house and the evidence that the liquor was found on the land of another, were

presented to the triers of the facts—the jury. That the liquor was found upon the premises of another— logged-off land immediately adjacent to appellant's cabins not more than twenty-nine feet from appellant's boundary line, and was in a somewhat secluded place —was a fact for the jury to consider in relation to the other facts. The inference the jury no doubt drew, and that it had a right to draw, from the evidence that appellant was brewing beer at the time of his arrest; that he was warned by his daughter of the approach of the deputies; that beer was found hidden near his premises; that he had no near neighbors and that his cabins were not tenanted, was that the liquor was hidden in an out-of-the-way place by, and was the property of, the appellant.

The next question is whether the state's exhibits A, B, C, and D were properly admitted in evidence. These exhibits were photographs of the dwelling house, of the cabins, and of the chicken coop with the hole in the floor through which were withdrawn from a compartment below five empty ten-gallon kegs. One of the deputies testified that the odor from these kegs indicated they had formerly contained wine. The appellant testified that the kegs had been used in shipping loganberry juice to the cannery.

The jury did not view the premises, but a verbal description of the same was given by a number of witnesses. By the aid of the photographs, the jury could more clearly comprehend the physical facts—the location of the cabins with respect to the dwelling house, the points at which the liquor was found, the distance from the dwelling house to the liquor cache, and the place where the empty kegs were discovered—the kegs which a state's witness testified had formerly contained wine.

Testimony was admissible to show that the kegs were hidden. The photographs of the place where the kegs were discovered were explanatory of the oral description of that place. The admission or rejection of photographs lies largely within the discretion of the trial court, and the exercise of that discretion will not be reviewed unless the evidence clearly shows an abuse of discretion. This court is committed to a liberal view with reference to the admission of photographs in evidence.

In *Kelly v. Spokane*, 83 Wash. 55, 145 Pac. 57, it is said:

"We deem it pertinent, however, to say that the practice of admitting photographs and models in evidence in all proper cases should be encouraged. Such evidence usually clarifies some issue and gives the jury and the court a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses."

The court did not commit error in the admission of the photographs.

Finding no error in the record, the judgment is affirmed.

MITCHELL, C. J., PARKER, and TOLMAN, JJ., concur.

BEALS, J., concurs in the result.